FILED

2008 May-28  AM 08:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN  DIVISION

| | | |
|---|---|---|
| **SHELBY RESOURCES, INC.,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-07-BE-0170-S** |
| | ] | |
| **J.P. MORGAN CHASE NATIONAL** | ] | |
| **CORPORATE SERVICES, INC. et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

### <u>MEMORANDUM OPINION</u>

This case comes before the court on the motion for summary judgment (doc. 18) filed by

Defendants The Bank of New York Trust Company N.A. f/k/a J. P. Morgan Chase Bank and

Homecomings Financial, LLC f/k/a Homecomings Financial Network, Inc.  In its response to the

motion, Plaintiff Shelby Resources, Inc. concedes that summary judgment is appropriate as to

two of its four claims – breach of contract and negligence.  For the reasons stated below, the

court concludes that Defendants' motion is also due to be GRANTED as to the other two claims

– deceit and suppression.

### I.  FACTS

This case arises from the Plaintiff's purchase of property from Defendants at a

foreclosure auction.  The foreclosure resulted from the previous owners' default on their

mortgage after they discovered mold in the home and moved out for health reasons.  Prior to the

sale, Defendants did not disclose to Plaintiff that the home was contaminated with mold.

Subsequent to the foreclosure sale, Plaintiff entered the home it had purchased and discovered

the mold contamination.  When Defendants refused to rescind the sale, Plaintiff brought this

action.  It claims that Defendants are liable for suppression and deceit because they failed to disclose the mold contamination prior to the sale of the property.

On May 20, 2003, James and Brenda Culp executed a mortgage on the real property at issue in this case, which is located in Shelby County, Alabama.  The mortgage was subsequently transferred and assigned to J. P. Morgan Chase Bank.  In December 2005, the Culps purchased a second home because they claimed that mold contamination in the property at issue rendered the home uninhabitable for them.  On December 5, 2005, the Culps requested that Defendants suspend their mortgage payments; they included with their request (1) a letter from Mr. Culp's doctor indicating that exposure to water-damaged flooring had caused Mr. Culp increased asthma symptoms and suggesting that "high concentrations of indoor mold could be responsible for the asthma attack;" and (2) a microbiological contamination report indicating the presence of "a significant amount of surface microbial organisms" found "primarily behind the walls."

The Culps ultimately defaulted on their mortgage, and Defendants foreclosed on the property pursuant to the mortgage agreement's power of sale provision.  Beginning June 14, 2006, Defendants published notice of the foreclosure sale for three consecutive weeks in the *Shelby County Reporter*.  The notice included the date of sale, description of the property, and the following language:

> THIS PROPERTY WILL BE SOLD ON AN "AS IS, WHERE IS"
> BASIS, SUBJECT TO ANY EASEMENTS, ENCUMBRANCES,
> AND EXCEPTIONS REFLECTED IN THE MORTGAGE AND
> THOSE CONTAINED IN THE RECORDS OF THE OFFICE OF
> THE JUDGE OF PROBATE OF THE COUNTY WHERE THE
> ABOVE-DESCRIBED PROPERTY IS SITUATED.  THIS
> PROPERTY WILL BE SOLD WITHOUT WARRANTY OR
> RECOURSE, EXPRESSED OR IMPLIED AS TO TITLE, USE
> AND/OR ENJOYMENT AND WILL BE SOLD SUBJECT TO
> THE RIGHT OF REDEMPTION OF ALL PARTIES ENTITLED
> THERETO.

Plaintiff Shelby Resources, which has been buying and selling real estate for profit for approximately twenty-two years, purchases ninety-five percent of its properties at foreclosure sales.  Mike Phillips, the President of Shelby Resources, read Defendants' foreclosure notice within one week of the first publication, researched the property, and performed a market analysis.  Mr. Phillips drove around the home and inspected the exterior.  He cannot recall whether he got out of his vehicle, but he noted that the curtains and blinds prohibited him from looking at the interior through the windows.  Mr. Phillips did not enter the home or otherwise inspect the interior.  Because the exterior of the home was in good condition, Mr. Phillips "assume[d] the interior of the home [wa]s in good condition as well."  Mr. Phillips admitted that he never requested an inspection of the property.

At no time did the Defendants disclose to Plaintiff or any other person the contents of the doctor's letter concerning Mr. Culp or the microbial contamination report provided to Defendants by the Culps.  Phillips understood that "as is" means "[t]hat there are basically no guarantees or warranties as to the condition of the home or title or . . . anything like that" and that certain risks inhere in purchasing foreclosed properties.  In fact, Shelby Resources has previously purchased foreclosures and later discovered mold contamination at those properties.

On July 11, 2006, Plaintiff purchased the property at the foreclosure sale for $145,000.  The foreclosure deed that Plaintiff received that day reiterated that the property was sold "as is, where is" and "without any warranty or recourse, express or implied, as to title, use and/or enjoyment."  A letter accompanying the deed the following day stated:  "No representations or warranties are made as to the value of the property, the condition of the property or the title to the property."

"[W]ithin about a week or two" after purchasing the property, Mr. Phillips obtained the

key to the property from the Culps.  They mentioned the mold contamination at that time.  Mr. Phillips entered the home, and observed "a lot [of mold] underneath the bathroom vanity" and "one spot in the master bedroom."  Mr. Phillips testified that the amount of mold he observed was "thick" and "more intense" than the amount he previously encountered in homes he had purchased.

Mr. Phillips contacted the foreclosing attorney and Defendants in an effort to rescind the purchase, but he was informed that the sale was "as is, where is."  After filing this lawsuit, Mr. Phillips then remediated the mold contamination, made repairs and improvements both related and unrelated to the mold contamination, and listed the property for sale.  In April 2007, Shelby Resources sold the property for approximately $191,000.  Plaintiff has not indicated in any evidence submitted to the court the amount spent on repairs and improvements related to or unrelated to mold, but he testified that Shelby Resources "probably" realized a profit on the sale.

On December 12, 2006, Plaintiff filed a complaint in the Circuit Court of Shelby County, Alabama, which was subsequently removed to this court based upon diversity jurisdiction. Plaintiff alleged that Defendants had notice of mold contamination at the property and had a duty to disclose that information to Plaintiff prior to the sale.  Plaintiff asserted four claims: suppression, deceit, negligence, and breach of contract.  On October 22, 2007, Defendants moved for summary judgment on all claims.  In response, Plaintiff concedes that summary judgment is appropriate as to its negligence and breach of contract claims, but contends that the suppression and deceit claims should go to the jury.

## II.  STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact exist.  Fed. R. Civ. P. 56.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

In reviewing the evidence submitted, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). Disagreement between the parties is not significant, however, unless the disagreement presents a "genuine issue of material fact." *Id.* at 247-48. A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 251-52.

After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Summary judgment is mandatory against a party who fails to show the existence of an element essential to the proof of its case at trial. *Celotex*, 477 U.S. at 322. However, the nonmovant can defeat summary judgment by showing *either* a genuine issue of material fact *or* that the movant is not entitled to judgment as a matter of law.

### III. DISCUSSION

To establish a *prima facie* case of suppression of a material fact under Ala. Code § 6-5-

102, a plaintiff must show:  (1) the defendant had a duty to disclose a material fact; (2) the

defendant concealed or failed to disclose this material fact; (3) the defendant's concealment or

failure to disclose this material fact induced the plaintiff to act or to refrain from acting; (4) the

plaintiff suffered actual damage as a proximate result; and (5) the defendant had actual

knowledge of the material fact allegedly suppressed.  *State Farm Fire & Casualty Co. v. Owen*,

729 So. 2d 834, 837 (Ala. 1998).

      The court has little trouble concluding that Defendants had actual knowledge of and

failed to disclose the mold contamination.  The court will also "spot" Plaintiff that the mold

contamination was a "material fact," that Plaintiff would have acted differently had Defendants

disclosed the mold contamination, and that Plaintiff suffered actual damage as a result of

Defendants' non-disclosure.  At the very least, disputed issues of fact exist regarding each of

these elements.  The real rub of Plaintiffs' suppression claim, therefore, is whether Defendants

had a duty to disclose the mold contamination.

      Alabama Code § 35-10-13, which sets forth the procedures for notice of foreclosure sales

does not expressly require disclosure of defects; it requires only "the time, place and terms of

said sale, together with a description of the property."  Absent a statutory disclosure requirement

specific to foreclosure sales, the court will look to Alabama law of fraud.  Under Alabama law,

whether a duty to disclose exists under certain circumstances depends on a number of factors:

"(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the

particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade;

and (6) other relevant circumstances."  *Owen*, 729 So. 2d at 842-43.

      Plaintiff's "deceit" claim, although a separate cause of action, is essentially another way

by which it may establish that Defendants had a duty to disclose the mold contamination.  *See*

*Soniat v. Johnson-Rast & Hays*, 626 So. 2d 1256, 1259 (Ala. 1993) (noting that "proof [of deceit, as defined by Alabama law,] . . . will establish . . . a duty to disclose").

"Deceit" is statutorily defined, in relevant part, as follows:

> Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action.  Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action.

*Ala. Code* § 6-5-103 (1975).  Citing to this section, the Alabama Supreme Court initially held that concealment would create liability if a defendant "knowingly takes action to conceal a material fact with the intent to deceive or mislead the plaintiff."  *Soniat*, 626 So. 2d at 1259.  Re-examining *Soniat* seven years later, the Alabama Supreme Court concluded that the holding was "too loose" and modified it so that concealment is enough only where the defendant "knowingly takes action to conceal a material fact that has been requested of him by the plaintiff and does so with the intent to deceive or mislead the plaintiff."  *Ex parte Farmers Exchange Bank*, 783 So. 2d 24, 28 (Ala. 2000) (emphasis added).

The duty to disclose, as relevant to both Plaintiff's suppression and deceit claims, is subject to two principles of Alabama law concerning the sale of used properties:  the effect of "as-is" contracts and the doctrine of *caveat emptor*.  With respect to the sale of used real estate,[1] Alabama still very much subscribes to the rule of *caveat emptor* -- buyer beware.  *Leatherwood, Inc. v. Baker*, 619 So. 2d 1273, 1274 (Ala. 1993).  Under this principle, a seller has no duty to disclose to a buyer any defects in a property.  *Nesbitt v. Frederick*, 941 So. 2d 950, 956 (Ala. 2006).  A buyer may protect himself by express agreement in the sales contract or deed.  *Leatherwood*, 619 So. 2d at 1274.  A contract that instead includes an "as is" clause creates no

---

[1] The Alabama Supreme Court abrogated the *caveat emptor* rule for sales of new residential real estate by builders or vendors.  *Cochran v. Keeton*, 252 So. 2d 313 (1971).

duty for the seller to disclose defects.  Generally, the "as is" clause will foreclose fraud and

suppression claims because the "as is" provision negates the justifiable reliance element essential

to those causes of action.  *Clay Kilgore Constr., Inc. v. Buchalter/Grant, L.L.C.*, 949 So. 2d 893,

897-98 (Ala. 2006).  This rule applies not only to claims of fraud by mistake, but also to

<u>intentional</u> fraud.  *ERA Class.Com, Inc. v. Stoddard*, --- So. 2d ----, 2007 WL 2893936, at *6

(Ala. Civ. App. Oct. 5, 2007) (emphasis added).

     A buyer may avoid the operation of *caveat emptor* under three narrow exceptions:  (1)

where the buyer makes a specific inquiry; (2) where a fiduciary relationship exists between the

buyer and seller; or (3) where the buyer's health or safety is affected.  *Nesbitt*, 941 So. 2d at 956.

The first two exceptions are inapplicable to this case.  The record reflects no specific inquiry by

any representative of Shelby Resources regarding mold or any other defect; thus, not only does

the exception not apply, but plaintiff has not satisfied one of the elements of deceit as most

recently explained by the Alabama Supreme Court in *Farmers Exchange*, 783 So. 2d at 28, in

that it made no request.  Second, the record reflects no evidence of any relationship, much less a

fiduciary relationship, between Shelby Resources and any of the Defendants other than that of

arm's-length buyer and seller.

     Shelby Resources focuses on the third exception:  the "health and safety" exception.  The

health and safety exception requires a seller to disclose a condition where it has "knowledge of a

material defect or condition that affects health or safety <u>and</u> the defect is not known to or readily

observable by the buyer."  *Nesbitt*, 941 So. 2d at 956 (quoting  *Moore v. Prudential Residential*

*Servs. Ltd. P'ship*, 849 So. 2d 914, 923 (Ala. 2002)) (emphasis added).  Defendants argue that

this exception does not apply for two reasons.  First, Defendants argue that the mold at issue

could not have affected <u>this particular</u> buyer's health or safety because Plaintiff is a business and

-8-

did not purchase the home as a residence.  The exception, as quoted above, does not read so narrowly, and Defendants cite no precedent that draws such a distinction.  This court will not hold that a particular buyer's health or safety must be affected for this exception to arise.  Such a restriction would swallow the whole exception – Defendants could never be charged with knowledge that mold would affect a particular buyer in a particular way, especially when they may not know most potential buyers until the auction itself, after three weeks of advertisements to the general public, some of whom most certainly would have a severe reaction to even the smallest amount of mold.

Second, Defendants argue that Shelby Resources cannot rely on the "health and safety" exception because Plaintiff failed to inspect the property.  Unlike their first argument, this argument is supported by the law.  Where a buyer has signed an agreement containing an "as is" clause and has failed to inspect the property prior to purchase, the Alabama Supreme Court has invoked another Latin precept – *volenti non fit injuria*, "to a willing person, no injury is done" – that precludes any reliance on the exceptions to *caveat emptor*.  *See Nesbitt*, 941 So. 2d at 958. Thus, where a buyer has failed to inspect a property he is purchasing pursuant to a contract containing an "as is" clause, he cannot later invoke an exception to *caveat emptor* in an attempt to impose upon the seller a duty to disclose.  *See, e.g.*, *id.* at 958 (refusing to apply the "specific inquiry" exception where buyer did not inspect the property); *Ray v. Montgomery*, 399 So. 2d 230, 233 (Ala. 1980) (refusing to apply any exception to *caveat emptor* because buyers were not prevented from inspecting the property and, thus, "[w]ith ordinary diligence, the Rays could have discovered evidence of the termite damage").

Plaintiff argues that the "rationale articulated by the Alabama Supreme Court in *Cruse* [*v. Coldwell Banker*, 667 So. 2d 714 (Ala. 1995), indicates that the] . . . 'as is' provision is an

element for the jury to consider."  In *Cruse*, the court held that an "as is" clause did not mandate

judgment as a matter of law where buyers failed to inspect a home represented to be new.  *Cruse*,

667 So. 2d at 716.  The rationale was that new homes in Alabama carry implied warranties of

habitability.  *Id.*  The Alabama Supreme Court explicitly distinguished that situation from a used

home, for which an "as is" clause will preclude an action for fraud.  *See id.* (citing *Hope v.

Brannan*, 557 So. 2d 1208 (Ala. 1989)) (holding that fraud action could not be maintained where

buyers signed "as is" contract and did not independently inspect the property).

The home in this case was undisputedly used; no evidence exists indicating that it was

represented otherwise.  Thus, *Cruse* is inapposite, and this case is more analogous to *Ray*, *Hope*,

and *Nesbitt*.  As in those cases, Plaintiff in this case has presented no evidence that it was

precluded from inspecting the home prior to signing an agreement containing an "as is"

provision.  Rather, at least twenty-seven days[2] elapsed between Plaintiff's reading the

advertisement and the auction at which it purchased the home.  Plaintiff was familiar with the

process of purchasing homes, including foreclosures.  In fact, Plaintiff's business is purchasing

homes for resale, and ninety-five percent of the homes Plaintiff purchases are foreclosures.  In

addition, the defect in this case was "readily observable."  Phillips testified that when he entered

the home "a week or two" after purchasing it, he observed "thick" and "intense" mold

contamination.

Plaintiff also cites a number of cases allegedly holding that "the doctrine of *caveat emptor*

will not act to bar claims of deceit and suppression . . . when the Defendants took steps to

conceal a known defect that is not readily observable to the buyer."  As noted above, the mold

---

[2] This calculation assumes Plaintiff read the advertisement one week after its first publication.  Phillips testified that he read the advertisement within one week of its first publication.

contamination was "readily observable" if Plaintiff had simply inspected the interior of the property.  Moreover, none of the cases Plaintiff cites actually stands for the unqualified proposition Plaintiff seeks to impose.  *See Commercial Credit Corp. v. Lisenby*, 579 So. 2d 1291, 1294 (Ala. 1987) (holding that, <u>absent a fiduciary relationship or specific inquiry</u>, seller did not owe buyer a duty to disclose a latent defect of which seller was aware); *Fennell Realty Co. v. Martin*, 529 So. 2d 1003, 1006 (Ala. 1988) (holding that seller had a duty to disclose because of buyer's <u>direct inquiry</u>); *Cashion v. Ahmandi*, 345 So. 2d 268, 271 (Ala. 1977) (holding that existence of fiduciary duty was jury question where plaintiffs presented evidence that seller's agent <u>advised them regarding offer price</u>); *Harrell v. Dobson*, 398 So. 2d 272, 275-77 (Ala. 1981) (<u>affirming directed verdict for defendants</u> because alleged misrepresentation in response to direct inquiry was sales "puff," and buyers were allowed to inspect the property).  In contrast to Plaintiff's characterization, those cases collectively demonstrate that *caveat emptor* bars fraud claims absent evidence that one or more of the three enumerated exceptions applies.  As discussed above, none of the exceptions applies in this case.

In sum, the evidence indicates that Plaintiff understood the nature of an "as is" clause, had purchased foreclosures with problems in the past, and failed to inspect the property at issue.  No evidence suggests that Plaintiff and Defendant had a fiduciary relationship, that Plaintiff inquired of defects, or that the mold would not have been found with a pre-purchase inspection.  Under these circumstances, Shelby Resources cannot take advantage of any exception to the principle of *caveat emptor*.  *See Nesbitt*, 941 So. 2d at 959 (affirming summary judgment for seller under analogous facts); *Hope*, 557 So. 2d at 1211 (same).  Shelby Resources has not raised a genuine issue of material fact as to its fraudulent suppression or deceit claims.

## IV.  CONCLUSION

Because the Plaintiff has conceded that summary judgment is appropriate as to its negligence and breach of contract claims, Defendants' motion will be GRANTED as to those claims.  For the reasons stated above, the court concludes that Defendants' motion for summary judgment on the remaining claims is also due to be GRANTED.  This case will be DISMISSED WITH PREJUDICE.  The court will enter a separate order consistent with this memorandum opinion.

DATED this 28th day of May, 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE